UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CARMUS RENSELER SHAW,

        Petitioner,

vs.                             Case No. 3:19-cv-1442-HES-MCR

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

        Respondents.

_____

## ORDER

### I.  STATUS

Petitioner, an inmate of the Florida penal system, filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition) (Doc. 1) challenging his state court (Baker County) conviction for sale of a controlled substance within 1000 feet of a specified area and possession with intent to sell a controlled substance within 1000 feet of a specified area. Respondents filed a Response to Petition for Writ of Habeas Corpus (Response) (Doc. 6) and Petitioner filed a Reply Response (Reply) (Doc. 9).[1]  Petitioner

---

[1] Respondents filed Exhibits (Doc. 6).  The Court hereinafter refers to the exhibits as "Ex." The page numbers referenced are the Bates stamp numbers at the bottom of each page of the exhibit.  Otherwise, the page number on the document will be referenced.  For the Petition, Response, and Reply, the Court references the page numbers assigned by the electronic filing system.

raises five grounds claiming the ineffective assistance of trial counsel.   The claims raised in the Petition have been exhausted in the state court system.

## II.   EVIDENTIARY HEARING

Petitioner seeks an evidentiary hearing in this Court.   Petition at 18. "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citations omitted), cert. denied, 137 S. Ct. 2245 (2017).   To be entitled to an evidentiary hearing, a petitioner must allege "facts that, if true, would entitle him to relief." Martin v. United States, 949 F.3d 662, 670 (11th Cir.) (quoting Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002)) (citation omitted), cert. denied, 141 S. Ct. 357 (2020). See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011) (opining a petitioner bears the burden of establishing the need for an evidentiary hearing with more than speculative and inconcrete claims of need), cert. denied, 565 U.S. 1120 (2012); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) (same).

If the allegations are contradicted by the record, patently frivolous, or based upon unsupported generalizations, the court is not required to conduct

an evidentiary hearing.   <u>Martin</u>, 949 F.3d at 670 (quotation and citation omitted).   Here, the pertinent facts are fully developed in this record or the record otherwise precludes habeas relief; therefore, this Court can "adequately assess [Petitioner's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert. denied</u>, 541 U.S. 1034 (2004).   Upon review, Petitioner has not met his burden as the record refutes the asserted factual allegations or otherwise precludes habeas relief; therefore, the Court finds Petitioner is not entitled to an evidentiary hearing.   <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007).

### III.   HABEAS REVIEW

Federal courts are authorized to grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." <u>Lee v. GDCP Warden</u>, 987 F.3d 1007, 1017 (11th Cir. 2021) (quoting 28 U.S.C. § 2254).   Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), there is a very deferential framework, limiting the power of federal courts to grant relief if a state court denied a claim on its merits.   <u>Sealey v. Warden, Ga. Diagnostic Prison</u>, 954 F.3d 1338, 1354 (11th Cir. 2020) (citation omitted) (acknowledging the deferential framework of AEDPA for evaluating issues previously decided in state court), <u>cert. denied</u>, 141 S. Ct. 2469 (2021); <u>Shoop v. Hill</u>, 139 S. Ct. 504,

506 (2019) (per curiam) (recognizing AEDPA imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases"). It is well understood that relief is limited to occasions where the state court's decision:

> "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A state court's decision is "contrary to" clearly established federal law if the state court either reaches a conclusion opposite to the Supreme Court of the United States on a question of law or reaches a different outcome than the Supreme Court in a case with "materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle" from Supreme Court precedents "but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413, 120 S. Ct. 1495.

Lee, 987 F.3d at 1017-18.

This is a high hurdle, not easily surmounted. If the state court applied clearly established federal law to reasonably determined facts when determining a claim on its merits, "a federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fairminded

disagreement.'" Shinn v. Kayer, 141 S. Ct. 517, 520 (2020) (per curiam) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).   Also, a state court's finding of fact, whether a state trial court or appellate court, is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1).   "The state court's factual determinations are presumed correct, absent clear and convincing evidence to the contrary."   Sealey, 954 F.3d at 1354 (quoting 28 U.S.C. § 2254(e)(1).   This presumption of correctness, however, applies only to findings of fact, not mixed determinations of law and fact.   Brannan v. GDCP Warden, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per curiam) (recognizing the distinction between a pure question of fact from a mixed question of law and fact), cert. denied, 573 U.S. 906 (2014).   Furthermore, the second prong of § 2254(d), requires this Court to "accord the state trial court [determination of the facts] substantial deference."   Dallas v. Warden, 964 F.3d 1285, 1302 (11th Cir. 2020) (quoting Brumfield v. Cain, 576 U.S. 305, 314 (2015)), petition for cert. filed, (U.S. Feb. 27, 2021) (No. 20-7589).   As such, a federal district court may not supersede a state court's determination simply because reasonable minds may disagree about the finding.   Id. (quotation and citation omitted).

Finally, where there has been one reasoned state court judgment rejecting a federal claim followed by an unexplained order upholding that judgement, federal habeas courts employ a "look through" presumption: "the

5

federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) (Wilson).

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner raises five grounds claiming ineffective assistance of trial counsel.  Claims of ineffective assistance of counsel are "governed by the familiar two-part Strickland[v. Washington, 466 U.S. 668 (1984)] standard." Knight v. Fla. Dep't of Corr., 958 F.3d 1035, 1038 (11th Cir. 2020), cert. denied, 141 S. Ct. 2471 (2021).  To prevail on a claim of ineffective assistance of counsel, a petitioner must successfully show his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" as well as show "the deficient performance prejudiced the defendant, depriving him of a 'fair trial, a trial whose result is reliable.'"  Raheem v. GDCP Warden, 995 F.3d 895, 908 (11th Cir. 2021) (quoting Strickland, 466 U.S. at 687).  As both components under Strickland must be met, failure to meet either prong is fatal to the claim. Raheem, 995 F.3d at 908 (citation omitted).

The Eleventh Circuit warns:

6

because "[t]he standards created by <u>Strickland</u> and §
2254(d) are both 'highly deferential,' . . . when the two
apply in tandem, review is 'doubly' so.   <u>Harrington [v.
Richter</u>, 562 U.S. 86, 105 (2011)] (internal citations
and quotation omitted).   Thus, under § 2254(d), "the
question is not whether counsel's actions were
reasonable.   The question is whether there is any
reasonable argument that counsel satisfied
<u>Strickland</u>'s deferential standard."   <u>Id</u>.

<u>Tuomi v. Sec'y, Fla. Dep't of Corr.</u>, 980 F.3d 787, 795 (11th Cir. 2020), <u>cert.</u>

<u>denied</u>, 141 S. Ct. 1721 (2021).

## V.   GROUND ONE

In his first ground for relief, Petitioner raises a claim of ineffective

assistance of counsel for failure to timely file a motion to suppress the drug

evidence based on probable evidence tampering, resulting in the deprivation of

due process of law.   Petition at 4.   Petitioner exhausted this ground raising

it in his Rule 3.850 motion and then pursuing an appeal to the First District

Court of Appeal (1st DCA).   Ex. G at 9-14; 147-48.   The circuit court denied

relief.   <u>Id</u>. at 50-51.   The 1st DCA affirmed per curiam.   Ex. I.   The mandate

issued on August 21, 2019.   <u>Id</u>.

The Court finds the state court's determination is consistent with federal

precedent.   Thus, the 1st DCA's decision is entitled to AEDPA deference.

Ground one is due to be denied as the state court's adjudication of the claim is

not contrary to or an unreasonable application of <u>Strickland</u> and its progeny or

based on an unreasonable determination of the facts.   As such, the Court finds

Petitioner is not entitled to habeas relief on ground one.

Of import, the circuit court relied on the Strickland standard, setting

forth the applicable two-pronged standard of review for a claim of ineffective

assistance of counsel.  Ex. G at 49 ("a defendant must show that counsel's

performance fell below the prevailing standards of professionalism, and that

performance was prejudicial to the defendant").   The court also noted that

failure to prove one component means the court need not address the other

component.  Id.  Furthermore, the court recognized that to satisfy the two-

pronged standard, the claim must be pled with specificity.  Id.  Finally, the

court opined, to meet the Strickland standard, "[t]he defendant must show that

there is a reasonable probability that, but for counsel's errors, the result of the

proceeding would have been different."  Id. at 50.

In short, Petitioner claims counsel should have moved to suppress the

drug evidence due to possible tampering pointing to the fact that the recovered

substance field tested positive for methylenedioxymethamphetamine (MDMA),

but ultimately, when tested by the Florida Department of Law Enforcement

(FDLE), the substance proved to be pyrrolidinovalerophenone (PVP).   The

record demonstrates, Petitioner told the confidential information (CI), Justin

Smith, that he had Molly (MDMA).  Ex. G at 71.  An exchange of money for

drugs ensued, and when field tested, the white powder substance weighed 0.2 grams and yielded a positive result for the presence of MDMA.   Id.

Special Agent Matthew Yarborough of FDLE testified as to what happened after the CI turned the baggie of white powder over to Agent Yarborough and Investigator Leo:

> At the time we purchased that and showed it to the camera, Investigator Leo placed it into a sheriff's office evidence bag.   What that is, is a clear bag with a – I guess you would say a -- some kind of red cover. You peal it off, and then seal that envelope so that the substance can't come out, or nothing else can be put in, and signs it.
>
> . . . .
>
> Once we were back at the office later that day, that bag – let me point out, at that time, that bag was kept in Investigator Leo's possession until we got back at the office after the second deal.   At that time, it was removed from that bag.   It was weighed.   The substance was tested using a field test kit by Investigator Leo, and again packaged before being placed into the evidence locker.

Ex. C at 297.

Agent Yarborough testified that a second investigation took place that same day.   Id. at 292.   He attested, Mr. Smith, the CI, engaged in a purchase of narcotics at a different location, purchasing marijuana from an individual with longer hair.   Id. at 293.

9

Mr. Smith identified Petitioner in the courtroom and testified that during the transaction, Petitioner told Mr. Smith he had Molly (MDMA), not cocaine. Id. at 339, 361. Petitioner, during the recording of the transaction, says, "I got the molly[.]" Id. at 363.

At trial, Troy Wolfer, the FDLE analyst with a degree in chemistry, testified he performed tests on the marked exhibit, and it contained pyrrolidinovalerophenone (PVP), a Schedule 1 controlled substance pursuant to § 893.03, Fla. Stat. Id. at 400, 402. He was not asked by either party to provide an explanation as to why the substance would yield a field test for MDMA.[2]

In Davis v. State, 244 So. 3d 312, 314 (Fla. 4th DCA 2018), the court explained:

> Section 893.13 of the Florida Statutes provides that any person who sells or delivers a controlled substance named or described in section 893.03(1)(c) commits a felony of the third degree. § 893.13(1)(a) 2., Fla. Stat. (2014). MDMA is listed as a controlled substance under section 893.03(1)(c), thus making the simple sale or delivery of MDMA a third-degree felony. § 893.03(1)(c)165., Fla. Stat. (2014). Subsection 893.13(1)(c)2., however, provides that if a person sells or delivers a controlled substance listed under section 893.03(1)(c) within 1,000 feet of certain establishments, the person "commits a felony of the second degree." § 893.13(1)(c) 2., Fla. Stat. (2014).

---

[2] Of import, both MDMA and PVP are synthetic drugs.

The same is true of sale of PVP within 1000 feet of a school.   Ex. A; Ex.
G at 60.   As such, Petitioner was charged and convicted of a felony of the
second degree.

 In support of his post-conviction motion, Petitioner argued that there
were two separate narcotics operations on June 10, 2015 conducted by the
same CI and the same agents, but only one of these undercover operations
involved Petitioner.   Ex. G at 12.   Petitioner asserted that the substance
seized during the first operation was not field tested until the second operation
was completed.   Id. at 12-13.   Therefore, Petitioner surmises that there was
some sort of mix-up, resulting in the drug from the second operation being
inserted into Petitioner's case.   Id.

Upon review, this is just conjecture, and found to be so by the circuit
court.   The court concluded, had counsel done as Petitioner claims he should
have done, it would have been "unlikely that the motion would have been
granted."   Id. at 50.   Notably, the court pointed out that the officer testified
the second transaction produced marijuana; therefore, it was "unlikely to be
mixed up with the 'white powder substance' purchased from Defendant."   Id.
at 51.   In denying relief, the court found Petitioner failed to demonstrate
evidence of tampering or that the outcome of the proceeding would have been

11

different if counsel had filed a motion to suppress alleging tampering of the evidence.   Id.

Petitioner has failed to establish any prejudice.   Both controlled substances (MDMA and PVP) are Schedule 1 controlled substances, and Petitioner did not face a greater penalty when the information was amended, changing amphetamine to PVP.   Ex. G at 4; Ex. A.   This is not the first time a field test has come back positive for MDMA and then a lab test provides clarity.   State v. Tigner, 276 So. 3d 813, 815 (Fla. 4th DCA 2019) (contents tested positive at scene for MDMA but later tested as "substitute cathinones").

The Court is not convinced that counsel performed deficiently by failing to file a motion to suppress alleging tampering with the evidence. Significantly, the second drug transaction concerned marijuana, not a white powder substance.   Therefore, counsel would have been hard pressed to argue that there was a mix-up after the second transaction that resulted in PVP being submitted to the lab instead of MDMA.   In this instance, it is much more plausible that the field test was simply not as accurate as the laboratory results, and the synthetic drug seized in the first transaction turned out to be PVP rather than MDMA.   Under these circumstances, counsel cannot be deemed deficient for failing to file a motion to suppress the seized evidence. Furthermore, there is no reasonable probability that the outcome of the case

would have been different if defense counsel had taken the action suggested by Petitioner.

In denying post-conviction relief, the trial court properly applied the two-pronged <u>Strickland</u> standard of review.   Thus, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court rejected this claim based on <u>Strickland</u>.   Further, Petitioner has not shown the state court unreasonably applied <u>Strickland</u> or unreasonably determined the facts. Indeed, upon review, the state court was objectively reasonable in its <u>Strickland</u> inquiry.   Furthermore, the 1st DCA affirmed the decision of the trial court.

As the threshold standard of <u>Strickland</u> has not been met, Petitioner has failed to demonstrate that his state court proceeding was fundamentally unfair and his counsel ineffective.   Thus, Petitioner has failed to demonstrate a Sixth or Fourteenth Amendment violation under the United States Constitution.

The Court finds the state court's determination is consistent with federal precedent.   The 1st DCA's decision, although unexplained, is entitled to AEDPA deference.   Applying the look through presumption described in <u>Wilson</u>, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.   In brief, the state court's adjudication of the claim is not contrary to or an unreasonable application of

13

Strickland and its progeny or based on an unreasonable determination of the facts.   This claim is due to be denied.

## VI.   GROUND TWO

In his second ground, Petitioner raises a claim of ineffective assistance of counsel, claiming his counsel performed deficiently for failure to strike Ms. Crystal Davis, a juror who demonstrated prejudicial bias, and for advising Petitioner to accept Ms. Davis, who eventually served as foreperson of the jury. Petition at 7.   Petitioner exhausted this ground by raising a comparable claim in his post-conviction motion and appealing its denial.   Ex. G at 15-22; 147-48.   The 1st DCA affirmed.   Ex. I.

Petitioner cannot satisfy the "contrary to" test of AEDPA review as the court denied the claim applying the Strickland standard and the appellate court affirmed this decision.   Thus, the only questions that remain are whether the court unreasonably applied that principle to the facts of the case or premised its adjudication of the claim on an unreasonable determination of the facts.   In this instance, this Court is not convinced of an unreasonable application or an unreasonable determination of the facts.

The record shows Ms. Davis, juror #28, when asked if her familiarity with court personnel, the clerk of court, or any of the deputies in the room would impact or influence her ability to be a fair and impartial juror,

14

responded, "[i]t could for me also."  Ex. B at 95.  Ms. Davis explained that her husband, a city firefighter, works closely with several of the investigators involved in the case.  Id. at 96-97.  She said it could affect her ability to be fair and impartial, as much as she would not want it to, "it might."  Id. at 97. The state asked to speak with Ms. Davis, and the court allowed it.  Id. at 98-99.  The state announced that Investigator Clem Leo was a potential state witness.  Id. at 101.  Ms. Davis said she and her husband know Mr. Leo on a personal basis.  Id. at 102.  Ms. Davis expressed some doubt about her ability to be fair and impartial.  Id. at 103.

The state questioned Ms. Davis about her concerns.  Id. at 119.  Ms. Davis said she works with Mr. Leo at a local credit union.  Id.  She further stated she and her husband socialize with Mr. Leo.  Id. at 120.  The following exchange took place:

> MS. BRANNAN [the prosecutor]:   Ms. Davis, in this case the Judge will instruct you on weighing the evidence.  Basically, he'll give you certain factors that you are to consider in determining whether or not you believe a witness's testimony.
>
> So if Investigator Leo and/or any other witness were to take the stand, would you be able to follow those instructions and determine for yourself whether or not you're going to believe his testimony or anyone else's testimony?

PROSPECTIVE JUROR DAVIS: (No audible response).

MS. BRANNAN: As far as specifically the testimony in the case, again, you would be instructed to look at whether or not it is corroborated by other evidence, to look at the witness's demeanor, those sorts of things, in determining what portions of the testimony, any, all, parts, that you're going to believe and consider as being facts for the case.

Do you think you could do that for Investigator Leo's testimony?

PROSPECTIVE JUROR DAVIS: Yes.

Id. at 120-21.

Ms. Davis also said she considered being charged meant a person had a reason to be picked up, but "not necessarily what he's here for, but something." Id. at 189. Defense counsel asked, "[a]t this point of the trial, does any of that count as proof to you of the charges that he faces?" Id. Ms. Davis responded in the negative. Id. at 190.

Thereafter, the court inquired as to whether Petitioner had sufficient time to discuss the selection of the jury with counsel. Id. at 205. Petitioner responded affirmatively. Id. Petitioner expressed no need for additional time to discuss the selection of the jury and he said he had no questions or concerns for the court. Id. Petitioner said he had been able to speak with his counsel and provide input into the selection process. Id. Petitioner

16

expressed his satisfaction with the jury that was selected to try his case.   Id.
at 205-206.   The court asked if Petitioner had any issues that he needed to
bring to the court's attention concerning the jury selection process.   Id. at 208.
Petitioner responded no.   Id.

The circuit court, in denying this ground, noted that after the state
requested the opportunity to question Ms. Davis and did so, "Ms. Davis
indicated that she thought she would be willing to follow the court's
instructions regarding evaluating witnesses and apply them to all witnesses."
Ex. G at 51.   Additionally, the court noted, upon further questioning, Ms.
Davis agreed that Petitioner's arrest was not evidence or proof of the actual
charges.   Id. at 51-52.

The record shows Mr. William Braley Salmon, trial counsel, announced
that the defense would accept Ms. Davis and would not back-strike.   Ex. B at
203-204.   The state also accepted the panel.   Id. at 204.   Thereafter,
Petitioner expressed his satisfaction with the panel.   Id. at 204-206, 208.   The
circuit court found Petitioner was not entitled to go behind his sworn
representations.   Ex. G at 52.   As such, the court denied post-conviction
relief.   Id.   The 1st DCA affirmed.   Ex. I.

In essence, the circuit court found Ms. Davis had been rehabilitated
through the prosecutor's questioning, Petitioner agreed to her selection, and

Petitioner's decision was "accessible to a lay person's understanding and evaluation." Ex. G at 52.   Therefore, the court was not persuaded by Petitioner's argument that he was totally reliant on counsel to strike Ms. Davis.

The record demonstrates Ms. Davis was competent to serve because she confirmed she would render her verdict solely upon the evidence and apply the instructions given by the court, setting aside any bias or prejudice.   The record also shows Investigator Leo did not testify.   Under these circumstances, counsel was not ineffective for failure to strike Ms. Davis.   The record supports the state courts' conclusions, showing counsel's performance was well within the broad range of reasonable assistance under prevailing professional norms. Strickland.

Here, the state court properly applied the two-pronged Strickland standard of review.   Thus, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court rejected the claim based on Strickland. Furthermore, Petitioner has failed to show that the state court unreasonably applied Strickland or unreasonable determined the facts.   Indeed, the state court was objectively reasonable in its inquiry and the 1st DCA affirmed the decision.   The 1st DCA's adjudication of the claim is not contrary to or an unreasonable application of Strickland and its progeny or based on an

18

unreasonable determination of the facts.   Therefore, ground two is due to be denied.

Finally, a petitioner "must demonstrate actual bias of a juror to support a claim of ineffective assistance of counsel based on failure to strike."   Hudson v. McDonough, No. 4:05-cv-00215-MP-EMT, 2007 WL 1308676, at *1 (N.D. Fla. May 2, 2007) (not reported in F.Supp.2d).   Petitioner has utterly failed to show Ms. Davis was biased against him.   Based on this record, Petitioner does not demonstrate that Ms. Davis was unable to put aside any bias and return a verdict based on the evidence and the law.   As such, Petitioner is not entitled to habeas relief.

## VII.   GROUND THREE

Petitioner raises another claim of ineffective assistance of counsel, asserting his counsel's failure to timely object to or to move for a mistrial after the prosecution elicited prejudicial and harmful testimony from a law enforcement officer amounted to a Sixth Amendment violation.   Petition at 9. Petitioner exhausted ground three by raising it in his Rule 3.850 motion and on appeal to the 1st DCA.   Ex. G at 23-28, 147-48.   The circuit court denied relief.   Id. at 52-53.   The 1st DCA affirmed.   Ex. I.

At trial, Agent Yarborough testified he grew up in the community, he went to school in the community, his face has been associated in the press with

Sheriff's Office events, and it is difficult to find people in the community that do not know him. Ex. C at 264. He testified concerning his practice of driving around the area to get short glimpses of a CI and his contacts:

> It's not necessary, but I like to see that person the best I can. A lot of times, it may change the aspect of the deal. I may know that they're known to sell different types of drugs, things of that nature, and we could call and, I guess, modify the plan as needed.

Ex. C at 282.

With respect to the first drug transaction of June 10, 2015, Agent Yarborough attested that, as he drove by, he recognized or was able to identify two black males: Carmus Shaw and Terrance Keith. Id. at 283. Agent Yarborough identified Petitioner in court. Id.

Petitioner is not entitled to habeas relief on his claim of ineffective assistance of counsel. In undertaking its review, the circuit court properly relied on the Strickland standard. Ex. G at 49-50. In his post-conviction motion, Petitioner argued that his counsel was ineffective for failure to object to the comments on the basis that the jury could infer that Petitioner had prior contact with law enforcement. Initially, the circuit court found Petitioner mischaracterized the agent's testimony, finding Agent Yarborough's testimony related more to being able to identify Petitioner rather than a statement about Petitioner's prior criminal activity. Id. at 53. The court noted that Agent

20

Yarborough had testified he used confidential sources because it was a small community, and he went to school with people in the community.  Id.  Agent Yarborough did not offer any testimony that upon identifying Petitioner as the person speaking to the CI the agent modified the plan based on any specialized knowledge about Petitioner's criminal history.  Id.

Thus, the court found had counsel objected, it was likely that the objection would have been overruled.  Id.  Indeed, the court opined it would have been a meritless argument and counsel cannot be deficient for failing to raise it.  Id.

The trial court found counsel's conduct reasonable under the circumstances presented.  The 1st DCA affirmed.  The record supports the state courts' conclusions, showing counsel's performance was well within the broad range of reasonable assistance under prevailing professional norms. Strickland.  Counsel's performance did not so undermine the proper functioning of the adversarial process that Petitioner was deprived of a fair proceeding.  Although Mr. Salmon did not object to this stated portion of Agent Yarborough's testimony, Mr. Salmon vigorously objected to other matters during the agent's testimony.  Ex. C at 290-96.  Also, Mr. Salmon effectively cross-examined the agent.  Id. at 299-312, 316-17.

Not only is the Court not convinced that, under these circumstances, counsel's performance fell outside the range of reasonably professional assistance, Petitioner has not shown resulting prejudice as there is no reasonable probability that if defense counsel had objected, his objection would have been sustained, as evinced by the decision of the circuit court finding it to be a meritless argument and the 1st DCA's affirmance of that decision.   A defense attorney need not make a meritless objection that would not have obtained relief.   Brewster v. Hetzel, 913 F.3d 1042, 1056 (11th Cir. 2019).

Here, the state court properly applied the two-pronged Strickland standard of review.   Thus, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court rejected the claim based on Strickland. Furthermore, Petitioner has failed to show that the state court unreasonably applied Strickland or unreasonable determined the facts.   Indeed, the state court was objectively reasonable in its inquiry and the 1st DCA affirmed the decision.   The 1st DCA's adjudication of the claim is not contrary to or an unreasonable application of Strickland and its progeny or based on an unreasonable determination of the facts.   Therefore, ground three is due to be denied.

## VIII.   GROUND FOUR

In his fourth ground, Petitioner claims he was deprived of the effective assistance of counsel because his counsel advised him not to testify based on the direction the case was proceeding and warned him his prior convictions would be used against him.   Petition at 11-12.   Although Petitioner recognized that he waived his right to testify on the record, he asserts it was involuntary, motivated by misadvice.   Id. at 12.   Petitioner avers, had he taken the stand, he would have testified he did not participate in the drug transaction, he was simply a bystander who directed the CI to a place to purchase drugs, and because Petitioner was a user himself, he was aware the dealer did not engage in hand-to-hand exchanges and was familiar with the quality of the drugs as an experienced user.   Id.   Finally, Petitioner contends, he would have testified that once the CI placed the money on the ground, Petitioner picked up the money and handed it to the drug dealer, hoping to be compensated.   Id.

The right to testify is "located" in the Due Process Clause of the Fourteenth Amendment and the Compulsory Process Clause of the Sixth Amendment and is corollary to the Fifth Amendment's guarantee against compelled testimony.   Lott v. State, 931 So. 2d 807, 817-18 (Fla. 2006) (per curiam) (citing Rock v. Arkansas, 483 U.S. 44, 51-52 (1987)).   A criminal

defendant makes the fundamental decision as to whether to testify in his own behalf. Id. at 817 (citing Jones v. Barnes, 463 U.S. 745, 751 (1983)).

At the inception of the trial, the court asked defense counsel if he wanted the introductory instructions to include an instruction on the defendant's right not to testify. Ex. C at 233. Mr. Salmon requested that instruction. Id. The record shows, prior to trial, Petitioner had seven felony convictions, including multiple felony counts of selling cocaine. Id. at 506-507.

The record shows, after the state rested, Mr. Salmon told the court he had made a strategic decision not to call Terrance Keith and Salathiel Surrency. Ex. C at 408. Counsel confirmed it was a strategic decision. Id. Mr. Salmon said, "[t]he only issue is Mr. Shaw." Id. The court took a recess to allow a discussion to take place between Mr. Salmon and his client. Id. at 408-409.

Back on the record, counsel confirmed that he had spoken with his client and had explained to Petitioner that this is one of, if not, the most important decisions to consider, and this decision is wholly and entirely up to Petitioner, that counsel has no part to play except to give advice as to the pros and cons of deciding to or not to testify, and to answer his client's questions. Id. at 409-410. Mr. Salmon told the court Petitioner did not wish to testify. Id. at 410. After being sworn in, Petitioner attested to that fact. Id.

24

On the record, Petitioner voluntarily agreed not to testify on his own behalf. His colloquy with the trial court supports this conclusion. The court reminded Petitioner that this was his decision, and Petitioner confirmed he understood. Id. He assured the court he had sufficient time to discuss the matter and make his decision. Id. at 411. He declined additional time to confer. Id. Petitioner said Mr. Salmon gave Petitioner his advice and counsel. Id. Petitioner confirmed it was his decision not to testify and he made the decision of his own free will. Id. He had no questions for Mr. Salmon or the court. Id.

The circuit court found this claim of ineffective assistance of counsel to be without merit. Ex. G at 55. Based on Petitioner's abysmal criminal history, defense counsel was justly concerned "about the jury being made aware of Defendant's prior convictions." [3] Ex. G at 54. Petitioner was apprised of his right to testify, he was aware that it was his decision, he was given the pros and cons of taking the stand, and he chose not to testify. Id.

As noted by Respondents, there is a hair-line distinction between Petitioner's description of himself as a facilitator rather than a participant,

---

[3] As noted by Respondents, the jury would, at least, be informed of the number of prior felonies and be instructed accordingly. Response at 39. Of additional concern, Respondents note there is always the chance a defendant may open the door to the details and types of prior crimes in the heat of cross-examination. Id.

and defense counsel would properly surmise that a prosecutor would seize the opportunity to subject a defendant to rigorous cross-examination with respect to the defendant's account of the events.   Response at 40.   Of paramount concern, the jury had watched and listened to the videotape.   Ex. C at 351. The jury heard Petitioner state, "I got the molly."   Id. at 363.   He instructed the CI to throw the money on the ground.   Id. at 367.   When the CI asks if the amount of the drug is a dub, Petitioner responded affirmatively.   Id.   The CI testified he was instructed to place the money on the ground, he placed a $20 bill on the ground, and the CI picked up the drugs from the ground.   Id. at 365.   The CI testified Petitioner retrieved the money from the ground and handed it to another individual to go purchase marijuana.   Id. at 370.

In closing argument, Mr. Salmon argued that the defense proved Mr. Smith is a conman, working towards becoming a professional informant.   Id. at 447.   Mr. Salmon noted Mr. Smith's changing testimony.   Id.   Mr. Salmon pointed out that Mr. Smith originally described Petitioner as having dreads, but Petitioner was bald on the date in question.   Id. at 447-48.   Mr. Salmon described Mr. Smith's scheme as a shell game.   Id. at 448.   Mr. Salmon focused on the fact that the videotape did not show the exchange of money for drugs.   Id. at 449.   He urged the jury to consider the fact that the CI was not

26

subjected to a body cavity search, enabling the CI to conceal drugs in orifices without discovery.  Id. at 453.

Of import, Mr. Salmon was very experienced counsel at the time of Petitioner's trial.   He said, "I've been doing it for 40 years[.]" Id. at 455. "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." Hardwick v. Benton, 318 F. App'x 844, 846 n.2 (11th Cir. 2009) (per curiam) (quoting Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000)).   Indeed, there is a strong presumption that an experienced trial counsel's performance is not ineffective, and in this case, Petitioner failed to overcome the presumption of effective performance accorded to his counsel.

In denying post-conviction relief, the trial court properly applied the two-pronged Strickland standard of review.   Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court rejected this claim based on Strickland.   Upon due consideration, the Court finds the state court's determination is consistent with federal precedent.   Petitioner failed to satisfy either the performance or prejudice prongs.   The 1st DCA's decision, although unexplained, is entitled to AEDPA deference.   Applying the look through presumption described in Wilson, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.

In brief, the state court's adjudication of the claim is not contrary to or an unreasonable application of <u>Strickland</u> and its progeny or based on an unreasonable determination of the facts.   Therefore, ground four is due to be denied.

## IX.   GROUND FIVE

In his fifth claim of ineffective assistance of counsel, Petitioner claims his counsel misadvised him to reject a favorable plea offer, subjecting Petitioner to a much harsher sentence.   Petition at 13.   Petitioner exhausted this claim by presenting it in his Rule 3.850 motion and appealing the denial of the motion.   Ex. G at 37-43; 147-48.   The 1st DCA affirmed.   Ex. I.

Petitioner claims he faced a maximum sentence of thirty years after being arrested and charged with two second degree felonies.   Petition at 14. Petitioner states during a pretrial proceeding, the state extended a favorable offer to resolve the case, but trial counsel advised Petitioner to reject the offer because the evidence was weak "and assured him that victory would be certain at jury trial or a much more favorable plea would follow."   <u>Id</u>.   Asserting he accepted counsel's advice, Petitioner rejected the offer, later proceeded to trial, was found guilty, and received a harsh sentence.   <u>Id</u>.   Petitioner contends that but for this misadvice, he would have made timely acceptance of the offer, the state would not have withdrawn the offer, the court would have accepted

28

the plea, and Petitioner would be serving a less harsh sentence.   <u>Id</u>.

Petitioner is serving a sentence of twenty-five years.   Ex. G at 63-65.

The record demonstrates the following.   While Petitioner was represented by Assistant Public Defender Julie C. Johnson, the court conducted a pretrial conference on January 19, 2016.   Ex. G at 129-33.   Ms. Johnson explained that the state had initially extended an offer of approximately nine years in prison but had recently relayed an offer to counsel, that counsel relayed to Petitioner, that the state would be willing to amend the charges and lower them to a score of approximately 23 to 24 months in prison. <u>Id</u>. at 130.   As such, the state was asking for an agreement of three years in prison without a minimum mandatory sentence to resolve the case.   <u>Id</u>.   Ms. Johnson told the court she relayed that offer to Petitioner, he did not want to accept it, and he wanted to go to trial.   <u>Id</u>.   Moreover, Petitioner asked that no continuance be sought to obtain the deposition of the CI, a resident of California, a matter that had been delayed due to a scheduling issue.   <u>Id</u>. at 131.   Due to the delay in obtaining the CI's deposition, Ms. Johnson asked that the court leave open the possibility of a negotiated plea at the trial status conference or the next week so that Petitioner would have all the information before deciding whether to accept an offer.   <u>Id</u>.

The court denied this request, stating there would be no negotiated plea after this date. Id. The court advised Petitioner, "whatever the last most recent negotiation was that was tendered to you from the State, that opportunity to enter into a negotiated plea arrangement, that ends today at the conclusion of this pretrial conference court date." Id. at 131-32.

Ms. Johnson advised, if Petitioner waited, it would be an open plea to the court, not a negotiated plea. Id. at 132. Petitioner said, "[u]h huh." Id. The court reiterated that it would not accept a negotiated plea past the pretrial conference. Id. Again, the court told Petitioner if he wanted a negotiated plea it had to be now, or "the options are to enter an open plea to the Court or to proceed forward and resolve your case at trial, absent exceptional circumstances." Id. The court said it did not consider the situation of the late deposition as an exceptional circumstance. Id.

Petitioner and his counsel conferred. Id. Ms. Johnson announced that Petitioner wanted to move forward with the trial. Id. at 133. The court asked Petitioner if he had any questions of the court or of his counsel about the process or Petitioner's decision. Id. Petitioner responded "[n]ope." Id.

Months later, on April 5, 2016, the court conducted a trial status conference. Id. at 134-39. Ms. Johnson announced that Petitioner wanted to go to trial. Id. at 136. At this point, Petitioner had picked up another

criminal case.  Id. at 137.  The prosecutor announced today was the last day Petitioner could have accepted a plea offer, "[n]ot that the Court would have honored it, but that was the last day I was offering."  Id.  Ms. Johnson responded:

> And I think Your Honor would not accept that offer.  I think at the last conversation we had about that the Court was indicating that it may at that time accept the 36-month offer given the issues with the CI and the other witnesses, but I've discussed that with Mr. Shaw, and **I don't believe he wishes to enter a negotiation today.**

Id. at 138 (emphasis added).

The court conducted an inquiry, asking Petitioner if all offers had been conveyed and communicated to Petitioner.  Id.  Petitioner responded affirmatively.  Id.  The court then asked if Petitioner was making a knowing, voluntary decision to reject those offers and proceed to trial.  Id.  Petitioner said yes.  Id.

Another pretrial conference was conducted on August 16, 2016.  Id. at 140-46.  This time, Mr. Salmon represented Petitioner.  He noted that Petitioner had two cases on the docket plus a potential charge of failure to appear for trial.  Id. at 141.  Mr. Salmon described the situation:

> I've explained to Mr. Shaw what the plea agreement is from the State, which is an offer of 15 years, allowing Mr. Shaw to argue for anything down

to and including 0 up to the Court's discretion in that
sense.  He faces – the total of the charges at this time,
without the failure to appear, is a maximum sentence
of 80 years.  We have provided him with the contents
of the video in this case, some screenshots of the
critical parts.  Until this point, Mr. Shaw has rejected
that plea offer.  **I don't know if he wishes to
consider it further this morning or not.**
Otherwise --

Id. (emphasis added).

The court took this opportunity to swear Petitioner in for the proceeding.

Id.  The court explained the offer, with the state's cap of fifteen years, allowing

Petitioner to argue mitigation and noting that the state would not appeal any

sentence, even below the guidelines.  Id. at 142.  The court said Petitioner

could ask for 0, for probation, or for time-served, and the state would be limited

to asking for 15 years and the court's sentence could not be more than 15 years.

Id.  Finally, the court advised that the agreement would resolve all three

cases.  Id.  Alternatively, the court advised that Petitioner could proceed to

trial.  Id. at 143.

The court conducted an inquiry, asking if the offer had been

communicated to Petitioner, and Petitioner said yes.  Id.  Petitioner said he

was told about the offer, but he wanted to stay on the trial docket.  Id. at 143-

44.  The prosecutor announced that the failure to appear case would be filed.

Id. at 144.  The court asked if Petitioner understood that the state was now

going to file its third-degree felony charge, and Petitioner responded affirmatively.   Id.

In his post-conviction motion, Petitioner alleges that the state made a plea offer of 27.6 months for all pending charges, and counsel advised Petitioner to reject the offer.   Ex. G at 37.   Petitioner contends his counsel made an unreasonable assessment of the strength of the state's case which wrongly induced Petitioner to reject the plea offer and proceed to trial.   Id. at 39.   Petitioner stated, after rejecting the state's offer, he posted bond, was released from custody, and was arrested on new charges arising from a separate incident.   Id.

The record belies Petitioner's contention.   The state's offer was for three years in prison.   Although Petitioner asserts his counsel made an unreasonable assessment of the state's case, the record shows counsel had not yet conducted the deposition of the CI at the time of Petitioner's decision to reject the three-year offer.   Id. at 130-33.   Reasonably, counsel asked the court to extend the period to obtain a negotiated plea due to the delay in discovery, but the court rejected that request.   The record shows, on a second occasion, a comparable offer was made and then rejected by Petitioner after further inquiry from the court.   Id. at 137-38.

In denying post-conviction relief, the circuit court found Petitioner's claim refuted by the record.   Id. at 55.   The record shows Petitioner repeatedly rejected offers to accept a plea agreement, expressing his desire to proceed to trial.   Id.   The court found Petitioner made a knowing and voluntary rejection of all offers made to him.   Id.   Indeed, the court concluded: "[t]he record reflects that Defendant was not interested in negotiating with the State and was resolute about proceeding to trial."   Id. at 56.   The 1st DCA affirmed the circuit court's decision.   Ex. I.

On this record, there is no doubt Petitioner repeatedly and soundly rejected plea offers.   The trial court made every effort to ensure that Petitioner was properly advised, conducting a thorough colloquy with Petitioner. Moreover, based on the record before the Court, Petitioner was never made an offer of 27.6 months for all pending charges.   The lowest plea offer on the record was an offer of three years (36 months).

Upon review, counsel did not perform deficiently.   They advised Petitioner of the offers, the offers were vetted and addressed at several pretrial proceedings, and Petitioner soundly rejected all offers and stated his intention to proceed to trial.   He did so even after the court advised him of the consequences of rejecting the plea offers and conducted a sworn inquiry.

34

Moreover, Petitioner managed to pick up additional charges, worsening his situation.

The Court will give AEDPA deference to the state court's decision. There is an extensive record showing Petitioner had no intention of accepting a negotiated plea.   He was quite insistent that he wanted to proceed to trial, no matter how many charges he picked up along the way.   The court attempted to reason with Petitioner to get him to at least consider the state's generous offers, but Petitioner was adamant that he wanted to proceed to trial. He may regret his decision, but it was his decision, and the record supports the state court's holding that his claim of ineffective assistance of counsel is without merit.

The Court finds the state court's determination is consistent with federal precedent.   The state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.   In brief, the state court's adjudication of the claim is not contrary to or an unreasonable application of Supreme Court law or based on an unreasonable determination of the facts. Therefore, ground five is due to be denied.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

35

2.      This action is **DISMISSED WITH PREJUDICE**.

3.      The **Clerk** shall enter judgment accordingly and close this case.

4.      If Petitioner appeals the denial of his Petition (Doc. 1), **the Court denies a certificate of appealability**.[4]   Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.   Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this _____ day of August, 2021.

_____
UNITED STATES DISTRICT JUDGE

sa 8/5
c:
Carmus Renseler Shaw
Counsel of Record

---

[4] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).   Upon due consideration, this Court will deny a certificate of appealability.

36